## KILE v. AMERADA PETROLEUM CORP.

No. 15979—Opinion Filed Dec. 15, 1925.

Rehearing Denied July 6, 1926.

**Oil and Gas — Leases—Nonliability of Assignee for Damages from Failure to Drill Offset Wells.**

In a contract of assignment of an oil and gas lease which reserves to the assignor out of the working interest assigned a certain fractional part of the oil and other mineral produced, but which does not in express terms bind and obligate the assignee to, at any time, drill for or produce oil upon the premises covered by the lease assigned, an implied covenant on the part of the assignee to protect the lines from drainage by drilling offset wells does not arise in favor of the assignor so as to make the assignee liable in damages for a failure to drill the offset wells.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Payne County; O. C. Smith, Judge.

Action by Eugene Kile against the Amerada Petroleum Corporation, to recover damages for breach of contract. Judgment for defendant, and plaintiff appeals. Affirmed.

Walter Mathews, for plaintiff in error.

Ellis A. Robinson, Victor C. Mieher and Quincy J. Jones, for defendant in error.

Opinion by FOSTER, C. This appeal was prosecuted by Eugene Kile, plaintiff in error, plaintiff below, to reverse a judgment of the district court of Payne county, wherein Amerada Petroleum Corporation, defendant in error, defendant below, obtained a judgment sustaining its demurrer to the amended petition of the plaintiff in error, and denying plaintiff in error any relief. Parties will be hereinafter referred to as they appeared in the trial court.

The assignments of error raise but the one proposition, as to whether or not the petition stated facts sufficient to constitute a cause of action in favor of the plaintiff. By his action plaintiff sought to recover the sum of $15,821, for the alleged failure of the defendant to drill offset wells which he alleged the defendant should have drilled under and by virtue of a certain contract of assignment dated and executed November 19, 1919.

The facts are that the plaintiff and one A. O. Corliss, on the 19th day of April, 1919, obtained an oil and gas lease from Forestus I. Hibbard and Fanny E. Hibbard on 20 acres of land, located in Payne county, for a term of three years and as long thereaft-

er as oil or gas should be produced in paying quantities from wells drilled on said land within the period of said lease. Subsequently, Corliss assigned his one-half interest in the lease to certain parties. These parties by a contract of assignment, in which the plaintiff joined, dated and executed November 19, 1919, entered into a contract with defendant which, after reciting the ownership of said lease by assignors, contained among other things the following language:

"* * * Now, therefore, for and in consideration of $1 (and other good and valuable considerations) the receipt of which is hereby acknowledged, the undersigned, the present owners of said lease and all rights thereunder or incident thereto, do hereby bargain, sell, transfer, assign and convey unto Amerada Petroleum Corporation all of their right, title and interest of the original lessees and present owners in and to the said lease and rights, in so far as it covers the east half of the northwest quarter of the northwest quarter of section 29, township 18 north, range 5 east of the Indian Meridian, in Payne county, Okla., but excepting and reserving unto the said assignors the following interest in and to said lease: The one-eighth part of all oil produced and saved, the one-eighth part of all gas and casinghead gasoline saved and produced, the said one-eighth of the oil, gas and casinghead gasoline to be at all times free and clear of any and all expense to said assignors. Said one-eighth royalty of the oil to be delivered in tanks to be provided by assignors if they so elect. It is understood that the one-eighth of the oil, gas and casinghead gasoline is in addition to the royalties reserved to the owner of said land," etc.

It was charged that defendant, through certain oil wells drilled by it on lands adjacent to the 20 acres covered by plaintiff's lease, had drained the oil therefrom to the damage of the plaintiff in the sum of $15,821, and that the plaintiff having obtained assignments from his co-assignors of their respective rights of action, on account of the alleged breach of the assignment contract by the defendant, had a right to maintain the action for such breach and to recover the full $15,821.

There is no dispute, as we understand it, that the rights of the parties hereto must be governed entirely by the provisions of the contract of assignment, dated and executed November 19, 1919. By virtue of this assignment, a one-eighth interest was carved out of the working interest in said lease and retained by the plaintiff. The relationship thus created between the plaintiff and defendant was purely contractual, and did not depend upon any rights of the plaintiff

as the fee-owner of said land. It is clear to our minds that the right of the plaintiff to require the drilling of offset wells is dependent upon an obligation assumed by the defendant in the contract of assignment to drill a well upon the property covered by plaintiff's lease. If, as between assignor and assignee, the contract of assignment imposed upon the assignee an obligation to drill or develop the premises for oil and gas, the rights and obligations of the parties would be the same as that of lessor and lessee in an ordinary oil and gas lease, and if the assignee, having obligated himself to drill and prospect for oil and gas, omitted to protect the lines from drainage by offset wells, he would undoubtedly be liable under implied covenants the same as a lessee under similar circumstances.. But an examination of the contract of assignment in the instant case fails to disclose that the defendant expressly covenanted to drill or prospect for oil and gas upon the premises covered by the lease assigned to it. It is contended, however, that this obligation must be implied from the obligation expressly made in the assignment to pay or deliver one-eighth of the oil and gas and casinghead gas produced. However, we do not understand, even in an oil and gas lease, that the covenant or obligation of the lessee to drill or develop the premises for oil and gas can be implied where there is no express covenant or obligation contained in the lease itself. The implied obligation is to diligently develop where there is some express obligation to drill assumed by the lessee and, in such case, to protect the lines from drainage by offset wells. Since royalties to be derived from exploration and development constitute the real consideration in an oil and gas lease, a lease not obligating the lessee in express terms to drill at all would be without consideration and void and the lessor would not be bound thereby. There must be some express covenant entered into upon which to base the implied obligation, and if the court should undertake to supply the primary framework of the agreement which the parties themselves have omitted, it would constitute an invasion of the domain of private contract reserved to individuals under the law.

It is usual in leasing contracts, and other instruments in which the development and operation of land for oil and gas is contemplated, to impose an obligation upon the lessee to drill a well within a certain time or to purchase the right to delay the commencement of such well for a definite time for a given consideration, but the primary purpose in all such contracts is to bring about the development of the premises for oil and gas within a given time or within such time as drilling may be delayed upon payment of the agreed consideration therefor. There is an entire absence of such conditions and stipulations in the contract of assignment involved in the instant case. To hold that these fundamental provisions in leasing contracts are to be implied in the contract of assignment involved here, and then hold that plaintiff's right to recover can be based upon these implied provisions, coupled with the further implied covenant to drill offset wells, would be to stretch the rule beyond legitimate bounds. No court to our knowledge has ever gone so far. If as contended by plaintiff, the assignment contract in question should be regarded as a sublease, the same rule would apply. In either case there is no express agreement contained in the contract which could form the basis of relief for the breach of an implied obligation to drill offset wells. The case of Akin v. Marshall Oil Co. (Pa.) 41 Atl. 728, cited and relied upon by plaintiff in his brief, is not applicable to the 'instant case. In that case there was an express agreement in the assignment contract to drill two wells, one to be completed within four months. The court held that the agreement of the assignee, Marshall Oil Company, to give to the assignors or sublessors a one-eighth of the oil produced from wells which the assignee or sublessee had agreed to drill, was a covenant running with the land and could not be defeated by the execution of a new lease pursuant to a fraudulent arrangement between the sublessee and the original owner.

In the instant case there is no showing of fraud or other inequitable conduct on the part of the defendant in the procurement of the contract of November 19, 1919, or any allegation or showing of a fraudulent arrangement between the defendant and the original owner of the land, and we must find in the contract alone the basis for the relief sought by the plaintiff in this case. The contract involved here was an ordinary assignment of an oil and gas lease reserving to the assignor a certain interest out of the working interest assigned, but without any specific agreement or covenant on the part of the assignee to drill on the premises covered by the assignment.

In 16 R. C. L. page 843, it is said:

"* * * Although the word 'grant' or 'demise' will in a lease create an implied covenant against the lessor, yet the same words in an assignment will not create an implied covenant against the assignor, the object and intent of the parties in making an assign-

ment being to put the assignee in the place of the lessee; when that is done, the assignor ceases to have any further concern with the contract unless he has bound himself by express covenants. * * *"

In Cox v. Butrs, 48 Okla. 147. 149 Pac. 1090. this court said:

"* * * It is the duty of one party wno intends to bind another to do a certain thing by covenant in any written instrument to word the contract by the use of distinct and intelligible terms, so that there can be no misunderstanding, and not call upon the courts to infer that the contract was intended to be a certain way. which was probably understood by one party in a sense different from that sought to be ascribed by the other."

We conclude. from a careful examination of the entire record. that the trial court committed no error in sustaining the demurrer to the amended petition. The judgment of the trial court is therefore affirmed.

By the Court: It is so ordered.